UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK    X

CHIROPRACTIC NEURODIAGNOSTIC, P.C.,
New York Corporation, on behalf of itself and
all other entities and individuals that are
assignees of claims for the payment of
diagnostic testing no-fault benefits
similarly situated,

                    Plaintiff,                    08-CV-2319
                                                      (SJF)(AKT)

       -against-

                                                       **OPINION & ORDER**

ALLSTATE INSURANCE COMPANY,

                    Defendant.
_____X

FEUERSTEIN, J.

Plaintiff Chiropractic Neurodiagnostic, P.C. ("plaintiff") commenced this action against defendant Allstate Insurance Company ("defendant") in the Supreme Court of the State of New York, County of Nassau, bearing index no. 08-007607 (the state court action), on April 24, 2008, alleging claims, *inter alia*, for fraud, breach of contract and unjust enrichment arising from defendant's failure to reimburse no-fault benefits of plaintiff's assignors for diagnostic testing performed on eligible injured persons ("EIPs") under automobile insurance policies issued by defendant. On June 10, 2008, defendant filed a Notice of Removal to remove the state court action to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), on the basis, *inter alia*, that this is a putative class action with more than one hundred (100) putative class members that are seeking to recover in excess of the jurisdictional amount of five million dollars ($5,000,000.00) and there is diversity of citizenship. In the alternative, defendant

1

based removal on the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff now moves pursuant to 28 U.S.C. § 1447 to remand this action to state court and defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety for failure to state a claim.[1]

I. BACKGROUND

A. Factual Background[2]

Plaintiff is a New York corporation which provides diagnostic testing for EIPs under automobile insurance polices issued by defendant. (Compl., ¶ 1). At all relevant times, plaintiff was an assignee of the no-fault benefits of the EIPs to which it provided diagnostic testing believed medically necessary by healthcare providers licensed in New York. (Compl., ¶¶ 1, 14-18).

At all relevant times, defendant was an Illinois corporation with its principal place of business in Illinois. (Compl., ¶¶ 2, 4; Affidavit of Diane Eicher ["Eicher Aff."], ¶ 7). Plaintiff submitted to defendant claims for payment for the diagnostic testing it conducted on defendant's EIPs. (Compl., ¶ 19). Defendant denied numerous claims submitted by plaintiff on the grounds of "lack of medical necessity." (Compl., ¶¶ 20, 22, 44-48).

On April 24, 2008, plaintiff commenced this action against defendant in the Supreme Court of the State of New York, County of Nassau alleging claims, *inter alia*, for fraud, breach of

---

[1] Defendant's motion to strike all class action allegations in the complaint is granted in light of plaintiff's admission that it never intended to prosecute this case as a class action.

[2] The following facts are taken from the complaint and notice of removal and do not constitute findings of fact by this Court.

contract and unjust enrichment arising from defendant's failure to reimburse no-fault benefits of plaintiff's assignors for diagnostic testing performed on EIPs under automobile insurance policies issued by defendant. Plaintiff alleges, *inter alia*, that defendant "conspired with the other Defendants to procure fraudulent medical reports * * * [and] utilized the fraudulently procured medical reports to (i) deny future medical treatment coverage to its [EIPs]; (ii) deny reimbursement for healthcare services previously rendered to their [EIPs]; and (iii) reduce their exposure with regard to claims for additional health services." (Compl., ¶ 8; see also ¶¶ 27-30, 43, 57-64). Plaintiff further alleges that "Defendant and the IME companies have no right to deny payment for diagnostic testing provided by the Plaintiff and they intentionally prevented Plaintiff from providing appropriate medical care to Defendant's [EIPs]." (Compl., ¶ 13). In addition, plaintiff alleges that defendant "conspired with multiple IME companies * * * and with healthcare providers that perform IME examinations on behalf of [defendant] to conduct needless scientifically baseless medical examinations of Plaintiff's assignor's of [defendant] basic economic loss benefits under No-fault." (Compl., ¶ 26). Plaintiff also alleges that defendant "refer/referred high volumes of Plaintiff's assignors for IMEs for the purpose of procuring medical evaluations." (Compl., ¶ 27). Plaintiff further alleges that defendant "concealed from the Plaintiff and omitted material facts related to the covert and corrupt handling of Plaintiff's claims for reimbursement for medical services under the No Fault law." (Compl., ¶ 54; see also ¶¶ 57-64).

Moreover, plaintiff alleges that defendant's denial of its claims for payment breached defendant's contracts with its EIPs, to which plaintiff is an assignee. (Compl., ¶¶ 23, 65-71). According to plaintiff, defendant "was and is legally obligated to reimburse Plaintiff for medical

services provided by Plaintiff to [defendant's EIPs]." (Compl., ¶ 73-76). Plaintiff alleges that defendant's failure to make payments resulted in it "wrongfully keeping an undetermined amount no less than One Million dollars through the Defendants [sic] 'IME' scheme for services rendered since April 22, 2002." (Compl., ¶ 76). However, plaintiff only claims damages "in excess of" thirty-five thousand dollars ($35,000.00). (Compl., ¶ 55; "Wherefore" clause). Plaintiff seeks actual damages, interest, costs and attorney's fees. (Compl., ¶¶78-79). In addition, in its "Wherefore" clause, plaintiff also demands "extra-contractual, exemplary and punitive damages against the Defendant in an amount sufficient to deter and punish the Defendant from future conduct."

On June 10, 2008, defendant filed a Notice of Removal to remove the state court action to this Court pursuant to CAFA on the basis, *inter alia*, that this is a putative class action with more than one hundred (100) putative class members that are seeking to recover in excess of the jurisdictional amount of five million dollars ($5,000,000.00) and there is diversity of citizenship. In the alternative, defendant based removal on the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

Plaintiff now moves pursuant to 28 U.S.C. § 1447 to remand this action to state court and defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety for failure to state a claim.

II. DISCUSSION

A.  Removal Jurisdiction[3]

The removal statute, 28 U.S.C. § 1441(a), provides, in relevant part, that a civil action filed in state court may be removed by the defendant to federal district court if the district court has original subject matter jurisdiction over the plaintiff's claim. See also Lupo v. Human Affairs International, Inc., 28 F.3d 269, 271 (2d Cir. 1994). Federal district courts are "courts of limited jurisdiction," Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 125 S.Ct. 2611, 2616-2617, 162 L.Ed.2d 502 (2005), and only have original subject matter jurisdiction over cases in which there is a federal question, see 28 U.S.C. § 1331, and cases between citizens of different states, see 28 U.S.C. § 1332. "A district court must remand a case to state court 'if at any time before final judgment it appears that the district court lacks subject matter jurisdiction.'" Vera v. Saks & Co., 335 F.3d 109, 113 (2d Cir. 2003) (quoting 28 U.S.C. § 1447(c)).

Removal jurisdiction must be "strictly construed," Syngenta Crop Protection, Inc. v. Henson, 537 U.S. 28, 32, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002), and any doubts resolved against removability "out of respect for the limited jurisdiction of the federal courts and the rights of states." In re Methyl Tertiary Butyl Ether ("MTBE") Products, 488 F.3d 112, 124 (2d Cir. 2007). The burden of proving the Court's removal jurisdiction rests upon the party asserting jurisdiction. See United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994); see also

---

[3] Since the issue of whether this case was properly removed to this Court involves subject matter jurisdiction, it will be decided prior to defendant's motion to dismiss pursuant to Rule 12(b)(6). See, e.g. Rhulen Agency, Inc. v. Alabama Ins. Guaranty Association, 896 F.2d 674, 678 (2d Cir. 1990) (holding that the court should consider a motion to dismiss for lack of subject matter jurisdiction prior to any other motion to dismiss, since if the complaint is dismissed for lack of subject matter jurisdiction, the remaining motions become moot and do not need to be determined).

5

Blockbuster, Inc. v. Galeno, 472 F.3d 53, 58 (2d Cir. 2006) (holding that CAFA did not change the traditional rule that the party asserting federal jurisdiction bears the burden of establishing subject matter jurisdiction).

Defendant does not base removal of this action on this Court's federal question jurisdiction and, indeed, no federal question is presented in this case. Rather, defendant bases its removal of this action on CAFA, 28 U.S.C. §§ 1332(d), which confers original federal jurisdiction over any class action involving (a) one hundred (100) or more class members, (b) an aggregate amount in controversy of at least five million dollars ($5,000,000.00), exclusive of interest and costs, and (c) at least one (1) plaintiff and one (1) defendant who are citizens of different states. Another section of CAFA, 28 U.S.C. § 1453, "enhances the ability of defendants to remove class actions originally filed in state court to federal court." Blockbuster, 472 F.3d at 56.

"Congress enacted CAFA with the purpose of, *inter alia*, expanding the availability of diversity jurisdiction for class action lawsuits." Blockbuster, 472 F.3d at 56. CAFA defines "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 [one] or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Although the caption of plaintiff's complaint indicates that it was being pursued on behalf of "all other entities and individuals that are assignees of claims for the payment of diagnostic testing no fault benefits similarly situated," this action was not filed under rule 23 of the Federal Rules of Civil Procedure or similar state statute; plaintiff avers that it never intended to prosecute this action as a class action, (see Plaintiff's Memorandum of Law in Support of Motion to Remand and Plaintiff's

Opposition to Motion to Strike); and defendant admits that the complaint does not contain any substantive class action allegations, (see Notice of Removal, pp. 1, 7-8). Accordingly, this action is not a "class action" within the meaning of CAFA and, thus, defendant cannot base its removal of this action on that statute. See, e.g. Newman v. RCN Telecom Services, Inc., 238 F.R.D. 57, 61 n.1 (S.D.N.Y. 2006), reconsideration denied, 448 F.Supp.2d 556 (S.D.N.Y. 2006) (stating that since the plaintiff's claim was removed to federal court based on CAFA, denial of class certification required that the action be remanded to state court); see also Salazar v. Avis Budget Group, Inc., No. 07-cv-0064, 2008 WL 5054108, at * 5 (S.D.Cal. Nov. 20, 2008) (recognizing that courts have arrived at different conclusions on this issue and accepting the reasoning that because class certification was denied, there never was CAFA diversity jurisdiction and, thus, the action must be dismissed for lack of subject matter jurisdiction); Ronat v. Martha Stewart Living Omnimedia, Inc., No. 05-520-GPM, 2008 WL 4963214, at * 7 (S.D.Ill. Nov. 12, 2008) (recognizing that the cases are divided and holding that CAFA does not provide a basis for subject matter jurisdiction after a court denies class certification); Jones v. Jeld-Wen, Inc., No. 07-22328-CIV, 2008 WL 4541016, at * 3 (S.D.Fla. Oct. 2, 2008) (recognizing the conflicting conclusions reached on this issue in various courts and accepting the reasoning that because class certification was denied, there never existed CAFA diversity jurisdiction and, thus, remand was warranted).

Alternatively, defendant bases removal on this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). According to defendant, if plaintiff's claim for punitive damages is aggregated with his claim for compensatory damages of at least thirty-five thousand dollars ($35,000.00), the seventy-five thousand dollar ($75,000.00) jurisdictional amount is satisfied. Defendant

7

maintains that since plaintiff's allegation that defendant engaged in a pervasive scheme of requiring its insureds to undergo fraudulent IMEs asserts fraudulent or willful conduct on the part of defendant, punitive damages are potentially recoverable under New York Law and, thus, may be considered in determining whether the jurisdictional amount is satisfied.

Although plaintiff perfunctorily alleges that "complete diversity does not exist since [defendant] is authorized to do business in the State of New York by the Department of Insurance," (Plaintiff's Memorandum of Law in Support of Motion to Remand [Plf. Mem.], "Conclusion"), that contention is without merit. See, e.g. In re Balfour MacLaine Intern. Ltd., 85 F.3d 68, 76 (2d Cir. 1996) (holding that a corporation has dual citizenship for purposes of diversity jurisdictional; it is a citizen of the state of its incorporation and of the state where it has its principal place of business); Vays v. Ryder Truck Rental, Inc., 240 F.Supp.2d 263, 265 (S.D.N.Y. 2002) (rejecting the plaintiff's contention that there was no diversity because the defendant accepted service through the Secretary of State of New York State, maintained numerous offices in New York and transacted substantial business within New York); American Nat. Fire Ins. Co. v. Mirasco, Inc., No. 99 Civ. 12405, 2000 WL 1368009, at * 4 (S.D.N.Y. Sept. 20, 2000) (holding that a corporation may have only one principal place of business for diversity purposes and that it was not sufficient to allege that a corporation is licensed to do business in a state or that it does business in a state). Accordingly, there is complete diversity because defendant is a citizen of the State of Illinois, where at all relevant times it was incorporated and had its principal place of business, and plaintiff is a citizen of New York.

However, defendant, as the party asserting federal diversity jurisdiction, has not met its burden of showing a "reasonable probability" that the seventy-five thousand dollar ($75,000.00)

jurisdictional requirement is met. Colavito v. N.Y. Organ Donor Network, Inc., 438 F.3d 214, 211 (2d Cir. 2006); see also Tongkook America Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994).

Plaintiff claims compensatory damages in the amount of at least thirty-five thousand dollars ($35,000.00). Although as an element of its unjust enrichment claim plaintiff alleges that defendant "wrongfully [kept] an undetermined amount of no less than One Million dollars through the Defendants' 'IME' scheme for services rendered since April 22, 2002," (Compl., ¶ 76), plaintiff does not seek that amount in damages. Accordingly, the jurisdictional amount is only met if plaintiff's claim for compensatory damages is aggregated with its claims for punitive damages and/or attorney's fees.

Generally, "if punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied." A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991). In New York, generally "[p]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights." Rocanova v. Equitable Life Assurance Society, 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994). "However, where the breach of contract also involves a fraud evincing a 'high degree of moral turpitude' and demonstrating 'such wanton dishonesty as to imply a criminal indifference to civil obligations', punitive damages are recoverable if the conduct was 'aimed at the public generally.'" Id. (quoting Walker v. Sheldon, 10 N.Y.2d 401, 405, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961)). "Thus, a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a

9

pattern of similar conduct directed at the public generally." Id. In order to state a claim for punitive damages arising from a breach of contract: "(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature * * *; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally * * *." New York University v. Continental Ins. Co., 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995). "Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court * * * is to identify a tort independent of the contract." Id.

Even assuming, *arguendo*, that defendant acted egregiously and its conduct was aimed at the public generally, defendant's conduct in denying plaintiff's claims for no-fault payments is not actionable as an independent tort. Plaintiff's first cause of action seeks damages for fraud and alleges that in denying plaintiff's claims for payment, defendant made "representations concerning the investigation, adjustment, claims handling and supposed merits of Plaintiff's claims," which were "deceitful" and "perpetrated as part of a covert plan or scheme contrived by [defendant] * * * to procure false and contrived [IME] reports * * *." (Compl., ¶ 58). Plaintiff's fraud allegations merely relate to its dissatisfaction with defendant's performance of its contractual obligations, i.e. its failure to pay plaintiff's claims for no-fault payments, and, thus, does not state an independent tort claim. See, e.g. New York Univ., 87 N.Y.2d at 319, 639 N.Y.S.2d 283 (holding that the plaintiff's allegation that the defendants engaged in a "sham" investigation to perpetuate their allegedly fraudulent scheme merely evidenced the plaintiff's dissatisfaction with the defendants' performance of its contract obligations and, thus, did not state a tort claim). Similarly, plaintiff's third cause of action for unjust enrichment merely

10

restates plaintiff's breach of contract cause of action and fails to state a tort independent of defendant's contractual obligations. Significantly, the injury alleged by plaintiff as a result of defendant's allegedly improper denial of its claims is solely financial and is not typical of those injuries arising from tort. See, e.g. Logan v. Empire Blue Cross and Blue Shield, 275 A.D.2d 187, 193, 714 N.Y.S.2d 119 (2d Dept. 2000). Rather, plaintiff is "'essentially seeking enforcement of the bargain' * * * with [defendant], i.e. that [defendant] should be compelled to pay for allegedly medically-necessary services prescribed by [the EIPs'] treating physicians." Id. (quoting Sommer v. Federal Signal Corp., 79 N.Y.2d 540, 552, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992)); see, e.g. Alexander v. Geico Ins. Co., 35 A.D.3d 989, 990, 826 N.Y.S.2d 777 (3rd Dept. 2006) (holding that no independent tort claim existed for the plaintiff's claim that the defendant failed to provide her with continued no-fault benefits); Bono v. Monarch Life Ins. Co., No. 05-CV-2815, 2006 WL 839412, at * 3 (W.D.N.Y. Mar. 27, 2006) (dismissing the plaintiff's cause of action against the defendant-insurer for fraudulent claims handling on the basis that under New York law, an insurance claimant cannot convert a breach of contract claim into a tort claim by alleging that the insurer handled the claim fraudulently); Greenspan v. Allstate Ins. Co., 937 F.Supp. 288, 291 (S.D.N.Y. 1996) (holding that the plaintiffs' claim alleging that the defendant engaged in a variety of practices designed to deny or delay reimbursement for properly submitted and documented claims for medically necessary services, including, *inter alia,* employing independent medical examiners who deny claims after performing perfunctory examinations of the patient or reduce claims without cause, simply restated the plaintiffs' breach of contract claims and did not support an independent fraud claim).

Nor can tort liability be established under the theory that defendant is liable in tort

11

because it engaged in conduct outside the contract intended to defeat the contract, since plaintiff does not allege that the insurance contracts were "employed merely as a device in a broader scheme to defraud one of the parties" thereto. Metropolitan Life Ins. Co. v. Noble Lowndes Intern., Inc., 192 A.D.2d 83, 88, 600 N.Y.S.2d 212 (1st Dept. 1993), aff'd, 84 N.Y.2d 430, 618 N.Y.S.2d 882, 643 N.E.2d 504 (1994); see also Logan, 275 A.D.2d at 194, 714 N.Y.S.2d 119 (accord). Since there is no basis for determining that defendant's conduct constitutes a tort independent of its contracts with plaintiff's assignors, there is no basis upon which to sustain a claim for punitive damages. See, e.g. Logan, 275 A.D.2d at 194, 714 N.Y.S.2d 119 (affirming the dismissal of the plaintiffs' demand for punitive damages because there was no basis for determining that the defendant's conduct constituted a tort independent of the contracts); Alexander, 35 A.D.3d at 990, 826 N.Y.S.2d 777 (affirming the dismissal of the plaintiff's claim for punitive damages because, *inter alia*, there was no basis for determining that the defendant's conduct in failing to provide the plaintiff with continued no-fault benefits constituted a tort independent of the contract); Greenspan, 937 F.Supp. at 295 (dismissing the plaintiffs' demand for punitive damages since there was no remaining tort claim against the defendant).

Moreover, attorneys' fees may be considered as part of the amount in controversy only when those fees are recoverable "as a matter of right." Givens v. W.T. Grant Co., 457 F.2d 612, 614 (2d Cir. 1972), vacated on other grounds, 409 U.S. 56, 93 S.Ct. 451, 34 L.Ed.2d 266 (1972); see also In re Ciprofloxacin Hydrochloride Antitrust Litigation, 166 F.Supp.2d 740, 755-756 (E.D.N.Y. 2001) (accord). Although plaintiff requests an award of attorney's fees, it does not provide an amount sought and defendant does not even allege that such fees are recoverable as a matter of right. Indeed, in New York, an insured may not recover expenses, including attorney's

12

fees, incurred in bringing an affirmative action against an insurer to settle its rights under the insurance policy. See New York Univ., 87 N.Y.2d at 323; Mighty Midgets v. Centennial Ins. Co., 47 N.Y.2d 12, 21, 416 N.Y.S.2d 559, 389 N.E.2d 1080 (1979). In any event, even if attorney's fees are recoverable as a matter of right, it is unlikely that plaintiff would recover at least forty thousand dollars ($40,000.00) in attorney's fees, which is the amount necessary to meet the jurisdictional threshold. Since defendant has not shown that there is a reasonable probability that the seventy-five thousand dollar ($75,000.00) jurisdictional amount is met, plaintiff's motion to remand this action to state court is granted.[4]

III. CONCLUSION

Plaintiff's motion to remand is granted and this action is remanded to the Supreme Court of the State of New York, County of Nassau. Defendant's motion to dismiss is denied without prejudice to renewal in state court. The clerk of the Court is directed to enter judgment in accordance with this order, to close this case and, pursuant to 28 U.S.C. § 1447(c), to mail a certified copy of this order to the clerk of the Supreme Court of the State of New York, County of Nassau.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: January 26, 2009
Central Islip, New York

---

[4] In light of this determination, defendant's motion to dismiss is denied without prejudice because this Court lacks jurisdiction to entertain that motion. See, e.g. Rhulen, 896 F.2d at 678; Sieger v. Zak, No. 06-CV-3313, 2007 WL 2362348, at * 5 (E.D.N.Y. Aug. 15, 2007) (remanding the case to state court for lack of diversity jurisdiction and denying the defendants' motion to dismiss pursuant to Rule 12(b)(6) because the Court lacked jurisdiction to entertain that motion).

Copies to:

Rosenberg Law, P.C.
2631 Merrick Road, Suite 301
Bellmore, New York 11710
Attn:   Bruce S. Rosenberg, Esq.

Sonnenschein Nath & Rosenthal
1221 Avenue of the Americas, 23rd Floor
New York, New York 10020
Attn:   Deborah Hilarie Renner, Esq.

Short & Billy
217 Broadway
New York, New York 10007
Attn:   Skip Short, Esq.